UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAN RATH,

    Plaintiff,

v.                                              CASE NO. 8:16-cv-2016-T-23AEP

VERONIKA MARCOSKI,

    Defendant.
_____/

**ORDER**

Alleging that Veronika Marcoski, L.N.R.'s mother, wrongfully removed L.N.R. from the Czech Republic, Jan Rath petitions (Doc. 14) under the Hague Convention for the return to the Czech Republic of L.N.R., his son. Marcoski, a Czech-speaking Czech citizen who bought a house in Prague with her then-fiancé Rath (a Czech lawyer), denies an intent to reside in the Czech Republic with Rath and L.N.R.

After a seven-day bench trial in which Marcoski and Rath disputed the existence of a shared and settled intent for L.N.R. to reside in the Czech Republic, Magistrate Judge Porcelli recommends (Doc. 84) granting Rath's petition and returning L.N.R. to the Czech Republic. Resolving conflicting evidence, the report finds as a matter of fact that Marcoski more-likely-than-not intended for L.N.R. to live in the Czech Republic. Entered after de novo review, a December 5, 2016 order

(Doc. 110) overrules Marcoski's 183-page "objection" to the magistrate judge's report, accepts the magistrate judge's fact-finding, adopts the recommendation, and directs the clerk to enter judgment for Rath.

Because Marcoski's motion (Doc. 113) to stay the judgment pending appeal amounts to no more than an insistence that the magistrate judge should have differently resolved the conflicting evidence and because Marcoski's motion shows no clear error in the magistrate judge's fact-finding, Marcoski's appeal almost certainly will fail. Because each of the other factors, which are discussed below, governing entry of a stay favors the expedited enforcement of the Hague Convention, Marcoski's motion for a stay pending appeal warrants denial.

## DISCUSSION

**1. Marcoski fails to show that an appeal likely will succeed.**

Marcoski's motion largely repeats the arguments rejected first by the magistrate judge and later by the district judge after de novo review. "Rath's and Marcoski's 'obviously differing representations' about whether they intended that L.N.R. reside in the Czech Republic obligated Magistrate Judge Porcelli to 'make credibility assessments.'" (Doc. 110 at 2 (quoting Doc. 84 at 16)) The December 5 order explains that "a party establishes no error by force of mere disagreement, despite the virulence of the disagreement, with a magistrate judge's conclusion that is supported in the evidence." (Doc. 110 at 2)

Marcoski, a dual citizen of the Czech Republic and the United States, traveled to the Czech Republic several times in 2010 and 2011. After Rath, a Czech lawyer, approached Marcoski to propose a business deal involving a property in the Czech Republic owned by Marcoski's mother, Rath and Marcoski began dating. (Doc. 60 at 17–23)

According to Rath, sometime in 2011 the couple's relations turned from casual to serious, and the two discussed raising a family together. For Christmas in 2011, Rath and Marcoski flew from Prague to a house in Colorado owned by Marcoski's mother. (Doc. 62 at 129) Several months later, Marcoski moved into Rath's apartment in Prague. (Doc. 62 at 143) In late 2013 Rath bought a 1.6-carat diamond, which he mounted on an engagement ring. (Doc. 62 at 147–48) In January 2014, Rath proposed, and Marcoski accepted, but the two did not schedule a wedding. (Doc. 62 at 151–52) In April 2014, still without a wedding, Rath and Marcoski bought a house together in the Zbraslav district of Prague. (Doc. 60 at 44–47)

In contrast, Marcoski denies that she and Rath lived together, denies that she accepted Rath's proposal, and denies that she intended to settle in the Czech Republic. According to Marcoski, Rath and she saw each other "on and off." (Doc. 60 at 23) Marcoski claims that, despite traveling together to Portugal, Australia, and the Bahamas (several times) for vacation (Doc. 60 at 23), Marcoski and Rath never dated seriously. Marcoski first denied that Rath proposed (Doc. 60 at 43) but later

claimed that she rebuffed the proposal (Doc. 79 at 251–52, explaining that Rath "tried to say something about an engagement" but Marcoski declined the proposal).

Also, Marcoski claims that she and Rath purchased the Zbraslav residence as an investment. (Doc. 60 at 160–63) To support that claim, Marcoski identifies a Czech contractor's June 6, 2016 declaration (R19), which states that Marcoski and Rath told the contractor that the two bought the house as an investment. (Doc. 60 at 167–68) But Marcoski fails to explain why she and Rath waited more than a year after buying the house to begin renovation and to prepare the house for sale.

As the magistrate judge's report explains, the evidence is conflicting. Several exhibits and statements support Marcoski's contention that she intended to return with L.N.R. to the United States. For example, the evidence shows Marcoski's ties to Florida. Born and raised in the Czech Republic until age fourteen, Marcoski moved to St. Petersburg, Florida. (Doc. 60 at 11–13) A graduate of Rollins College and of the University of Miami School of Law, Marcoski is a member of The Florida Bar. (Doc. 60 at 181–82)

Marcoski claims that her fulfilling of CLE hours and her maintaining active status prove "dispositively" her intent to reside permanently in Florida.[1] Membership in The Florida Bar is without doubt a valuable commodity, which explains why many lawyers who reside outside Florida maintain "active" status. (*See*

---

[1] Marcoski identifies a dozen more putatively "dispositive" statements and exhibits. (Doc. 98) But, in fact, none compels the conclusion that Marcoski intended for L.N.R. to reside in the United States.

- 4 -

Doc. 60 at 172, at which Marcoski states that she sometimes works remotely from the Czech Republic)  Although interesting, Marcoski's ties to Florida (which include a house Marcoski owns in Redington Beach) fail to compel the conclusion that Marcoski intended to return with L.N.R. to the United States after the child's birth.

Marcoski claims as error the purported failure to consider Rath's Declaration of Intent (P92).  But the declaration, which states that Rath wants L.N.R. to "grow up experiencing American culture," is ambiguous.  The declaration contains no statement that Rath knew about Marcoski's intent to reside permanently with L.N.R. in the United States, and the parties vigorously dispute the purpose of the document.

Marcoski claims that Rath "conceded that he knew" about Marcoski's intent to reside in the United States. (Doc. 113 at 10)  Rath "admit[s] . . . a concern" that Marcoski would return to the United States if the couple's relations ended. (Doc. 81 at 186)  The statement shows (and several other exhibits and statements confirm) tumultuous relations.  But, despite Rath's fear that Marcoski might return to the United States, the evidence above and below supports the conclusion that Marcoski intended to raise — and for the first nine months of the child's life raised — L.N.R. in the Czech Republic.

Also, Marcoski claims (Doc. 60 at 234–35), but Rath denies (Doc. 75 at 82), that Marcoski told Rath about her impending return to the United States with L.N.R. But the last-minute, circuitous nature of Marcoski's return suggests an intent to abscond with L.N.R. *See Friedrich v. Friedrich*, 78 F.3d 1060, 1069 (6th Cir. 1996)

(Boggs, J.) (rejecting a consent defense in part because of the "deliberately secretive nature" of the child's removal).  Marcoski booked flights for herself and L.N.R. to the United States on April 19, 2016.  The next day, Marcoski and L.N.R. drove several hours to Munich, flew to London, and flew from London to the United States.  (Doc. 60 at 212–14)  Marcoski claims that she stopped in London to permit Rath a final opportunity to see his son before Marcoski and L.N.R. returned permanently to the United States.  But Rath, who on April 19 appeared at a court hearing in Manchester, England, before flying directly from Manchester to Prague (Doc. 75 at 82), knew nothing about, and had no plan for, the purported meeting in London.  (Doc. 75 at 82)

Rath's and Marcoski's respective characterizations of their relations conflict.  But in a November 11, 2015 medical form (R42), Marcoski signs her name "Veronika Marcoski-Rath."  And in a series of December 2015 text messages, Marcoski calls Rath "honey" and "my love" (Doc. 81 at 178), although according to Marcoski the two never dated seriously and Rath either ignored or mistreated Marcoski throughout their relations.  A December 22, 2015 message asks Rath to bring L.N.R.'s plastic spoon from "home" to the Marcoski family cottage in the Czech Republic, and a follow-up message the next day assigns Rath a list of items to buy at the grocery store.  (Doc. 60 at 178–80)  And the family pictures — including a family portrait (P11) of a pregnant Marcoski embraced in Rath's arms with a diamond ring displayed prominently on Marcoski's finger — strongly support the

conclusion that Rath and Marcoski intended to live together in the Czech Republic with L.N.R.

Also, Marcoski cites as error the rejection of the "grave risk" exception. An affirmative defense, the "grave risk" exception requires Marcoski to prove by clear and convincing evidence that L.N.R. will suffer a grave risk of serious harm if returned to the Czech Republic. *See Seamen v. Peterson*, 766 F.3d 1252, 1259–60 (11th Cir. 2014).

Marcoski claims that Rath falsely charged Marcoski with "criminal libel" in the Czech Republic and that Rath abused alcohol and abused her, but for several reasons those claims fail to establish a grave risk of serious harm to L.N.R. First, Marcoski's claims (Doc. 113 at 18–22) conflate the risk of harm to Marcoski with the risk to L.N.R. Second, Marcoski fails to present clear and convincing evidence either of Rath's alleged alcoholism or of the risk posed to L.N.R by the alleged alcoholism. Rath admits a trivial result on a breathalyzer at a traffic stop in 2013 (Doc. 63 at 57). But the only evidence other than Rath's statement that substantiates Marcoski's claim is Marcoski's testimony (E.g., Doc. 60 at 110–12). Evaluating the demeanor of Marcoski and Rath, the magistrate judge rejects Marcoski's testimony as insufficient to establish by clear and convincing evidence a grave risk of serious harm to L.N.R. (Doc. 84 at 42 & n.34)

A wrongful-removal action under the Hague Convention attempts to restore the pre-removal status quo and to deter a parent from crossing an international

border in search of a more favorable court. *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995) (Arnold, J.). Marcoski's statements confirm that she attempted to seek a more favorable resolution in a Florida state court after the couple's relations ended. Rath e-mailed Marcoski and asked her to mediate in the Czech Republic a time-sharing arrangement. But a "scared" Marcoski "decided that [she would] rather deal with all of this in the United States." (Doc. 60 at 232) A week after taking L.N.R. from the Czech Republic, Marcoski petitioned in the Circuit Court for Pinellas County for sole custody of L.N.R.[2] (Doc. 60 at 104)

"[T]he evidence supports the conclusion that Marcoski wrongfully removed L.N.R. from the Czech Republic." (Doc. 110 at 2) Because the purported errors amount to no more than a vehement, protracted disagreement with fact-findings supported in the evidence, Marcoski's appeal likely will not succeed.

**2. Marcoski fails to show that she will suffer an irreparable injury.**

Claiming that the Czech legal system is corrupt and "indifferent to [her] rights" (Doc. 113 at 24), Marcoski argues that the failure to grant a stay will deprive Marcoski of "an effective right of appeal." (Doc. 113 at 24 (italics omitted)) *Chafin* rejects an identical argument. 133 S. Ct. at 1024–25.

Also, Marcoski proffers the expert reports of two psychologists. (Docs. 113-3, 113-4) The experts, neither of whom met Marcoski, Rath, or L.N.R., explain that a child might suffer "anxiety and distress" if separated from a parent. Marcoski's

---

[2] *Marcoski v. Rath*, No. 16-004245-FD (Apr. 28, 2016).

- 8 -

argument fails for several reasons to show that Marcoski will suffer an irreparable injury absent a stay. First, Marcoski conflates the risk of irreparable injury to herself with the risk to the child. Second, neither expert proffers persuasive evidence — or any evidence at all — that L.N.R. faces a risk of harm if returned to the Czech Republic. And third, even if separating a child from a parent injures the child, Marcoski's wrongful removal injured L.N.R. by separating the child from his father. Returning the child promptly to the Czech Republic remedies that injury.

**3. Granting a stay injures L.N.R. and Rath.**

The granting of a stay pending appeal will delay, probably by many months, L.N.R.'s re-adjustment to life in the Czech Republic. *Mendoza v. Silva*, 987 F.Supp.2d 883, 908–09 (N.D. Iowa 2013) (Bennett, J.). And, because Rath must travel from the Czech Republic to St. Petersburg, Florida, to visit L.N.R., a stay pending appeal harms Rath by limiting the time he can spend with L.N.R.

**4. The public interest favors L.N.R.'s prompt return to the Czech Republic.**

Because a stay pending appeal conflicts with the Hague Convention's attempt to secure a child's "prompt return" to his country of habitual residence, *Chafin* warns against the "routine" granting of a stay in a Hague Convention action. 133 S. Ct. at 1026–27. The public interest favors L.N.R.'s expeditious return to the child's habitual residence in the Czech Republic so that a Czech court can adjudicate Rath and Marcoski's custody dispute.

## CONCLUSION

Because Marcoski fails to demonstrate that she likely will prevail on appeal, because Marcoski fails to demonstrate that she will suffer irreparable injury absent the granting of a stay, and because the public interest favors L.N.R.'s prompt return to the Czech Republic, Marcoski's motion (Doc. 113) to stay the judgment pending appeal is **DENIED**. Marcoski's motion (Doc. 116) for leave to reply to Rath's opposition (Doc. 115) is **DENIED AS MOOT**.

The judgment in the December 5, 2016 order is stayed until noon on **DECEMBER 15, 2016**, to permit Marcoski to move in the Eleventh Circuit for a stay pending appeal. If Marcoski moves for a stay in the Eleventh Circuit, the interim stay will extend until the Eleventh Circuit's disposition of Marcoski's motion.

ORDERED in Tampa, Florida, on December 12, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE